DECHERT LLP
30 Rockefeller Plaza
New York, New York  10112
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
H. Jeffrey Schwartz
Elise Scherr Frejka (ESF-6896)
Marco-Aurelio Casalins III (MC-4022)

*Proposed Attorneys for the Debtors and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
In re:                                                      :   Chapter 11
                                                            :
BAYOU GROUP, LLC, et al.,                                   :   Case No.:
                                                            :
                           Debtors.                         :   Jointly Administered
                                                            :
------------------------------------------------------------ X

**APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT
TO SECTIONS 327(a), 328(a), AND 329(a) OF THE BANKRUPTCY
CODE FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF DECHERT LLP AS GENERAL BANKRUPTCY AND LITIGATION COUNSEL**

TO THE HONORABLE ADLAI S. HARDIN,
UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this application (the "Application") for an Order, pursuant to §§ 327(a), 328(a), and 329(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), authorizing the retention and employment of Dechert LLP ("Dechert"), as general bankruptcy and litigation counsel.  In support of this Application, the Debtors rely on the Declaration of H. Jeffrey Schwartz, a member of Dechert

(the "Schwartz Declaration").¹ In further support of this Application, the Debtors respectfully represent as follows:

**Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue of these cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Relief Requested**

Pursuant to sections 327(a), 328(a), and 329(a) and Bankruptcy Rules 2014(a) and 2016(b), the Debtors seek the entry of an order authorizing the retention and employment of Dechert as general bankruptcy and litigation counsel to the Debtors.

**Introduction**

On the date hereof (the "Petition Date"), the Debtors filed with this Court separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Bankruptcy Rule 1015(b), the Debtors have sought an Order directing that their Chapter 11 cases be procedurally consolidated and jointly administered by this Court.

On April 28, 2006, the United States District Court for the Southern District of New York entered an order (the "Receiver Appointment Order") approving Jeff J. Marwil (the "Receiver") as the Receiver to take full and exclusive control over the Debtors. See Order Granting the Unofficial On-Shore Creditors' Committee's Motion to Appoint a Receiver attached as Exhibit B. Pursuant to the Receiver Appointment Order, Mr. Marwil is the "sole and exclusive managing member and representative of [the Debtors] with the sole and exclusive power and

---

¹ A true and correct copy of the Schwartz Declaration is attached hereto as Exhibit A and is incorporated herein by reference.

authority to manage and direct the business and financial affairs of [the Debtors] . . . ." Receiver Appointment Order at ¶ 7(e). Accordingly, the Debtors, under control of Mr. Marwil, are debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

No trustee, examiner, or official committee has been appointed in these cases. However, on February 7, 2006, an Unofficial On-Shore Creditors' Committee of the Bayou Family of Companies (the "Unofficial Committee") was formed for the purpose of protecting the interests of creditors.

The Debtors commenced these cases in order to, among other things, (a) investigate and pursue causes of action against various third parties in order to assure (i) an equality of distribution among defrauded creditors and (ii) maximize the value of claims against non-investor third parties who were complicit with the Debtors' former principals in perpetrating a fraud; (b) employ a fair and equitable claims and distribution process for all of the Debtors' creditors; and (c) avoid the costs and risk of defending claims of investors and other creditors in various other jurisdictions. The imposition of the automatic stay, the right to bring avoidance actions under the Bankruptcy Code, the efficiency of the Chapter 11 claims administration process, the transparency of Chapter 11 proceedings, and the benefits of making distributions under a Chapter 11 plan are all in the best interests of the Debtors, their estates, and their creditors.

## **The Bayou Family of Companies**

**The On-Shore Funds Were Inherently Fraudulent**

The Debtors are an affiliated group of entities that created, operated, comprised, and controlled private pooled investment funds (commonly known as "hedge funds"). As more particularly described herein, the Debtors operated their hedge funds as a fraudulent Ponzi

3

scheme, and engaged in a series of fraudulent actions and transactions in furtherance of their criminal scheme.

Bayou Management, LLC ("Bayou Management") and Bayou Fund, LLC ("Bayou Fund"), are limited liability entities organized under the laws of the State of New York. Bayou Accredited Fund, LLC, ("Bayou Accredited"), Bayou Advisors, LLC ("Bayou Advisors"), Bayou Affiliates Fund ("Bayou Affiliates"), LLC, Bayou Equities, LLC ("Bayou Equities"), Bayou Superfund, LLC ("Bayou Superfund"), and Bayou No Leverage Fund, LLC ("Bayou Superfund") are all limited liability entities organized under the laws of the State of Delaware. Bayou Group, LLC ("Bayou Group") is a limited liability entity organized under the laws of the State of Connecticut. The foregoing Debtors shall be referred to herein as the Bayou Entities.

The Bayou Fund -- the first created of the Bayou Entities' hedge funds – was launched by Samuel Israel III ("Israel") and Daniel E. Marino ("Marino") in 1996 with $1.2 million in capital. The Bayou Fund was a single-manager hedge fund marketed to "accredited investors" and large institutions. During a reorganization in January 2003, the Bayou Fund was liquidated and four separate on-shore hedge funds were created: Bayou Accredited, Bayou Affiliates, Bayou No Leverage, and Bayou Superfund (collectively, and with the Bayou Fund, the "Bayou Hedge Funds"). At year-end 2004, the Bayou Entities claimed to have approximately $411 million in capital under management.

Within months after the Bayou Hedge Funds opened and started trading, they sustained heavy trading losses and began falsifying their financial disclosures and fraudulently misrepresenting their investment performances. In financial summaries that were sent to clients, the volatile swings of the trading gains and losses were concealed by padding and fabricating the results through a pattern of fraud. After sustaining a net loss of millions of dollars, the Bayou

4

Entities concealed their losses, created false investment performance reports, and created false financial statements.

The Bayou Entities' mounting losses could not withstand an independent audit of the year-end 1998 financial results.  To avoid detection, Marino, a certified public accountant, created a fictitious accounting firm – Richmond-Fairfield Associates, CPA, PLLC ("Richmond-Fairfield") – to pose as the independent auditor, replacing Grant Thornton LLP.  Beginning in 1999, Israel and Marino caused the Debtors, under cover of "audits" by Richmond-Fairfield, to continue to generate false performance summaries and false financial statements designed to mislead investors.  The Bayou Hedge Funds were self-administered.  Without a truly independent auditor and without an independent administrator, the Bayou Entities' own books and records do not accurately reflect the true financial performance of the Bayou Hedge Funds.

Over the course of their fraudulent existence, the Bayou Entities induced investments of a reported $450 million into the Bayou Hedge Funds and their off-shore counterparts.  The Bayou Entities used the incoming capital from new investors to continue operations and pay redemption proceeds to investors who sought to exit the hedge funds, all as part of the fraudulent concealment of the Ponzi scheme.

**The Fraudulent Financial Scheme
Encompassed the Off-Shore Funds**

The Bayou family of companies also consists of various off-shore hedge funds that are exempted limited companies organized and incorporated under the laws of the Cayman Islands. Bayou Offshore Master Fund, Ltd., Bayou Offshore Fund A, Ltd., Bayou Offshore Fund B, Ltd., Bayou Offshore Fund , Ltd., Bayou Offshore Fund D, Ltd., Bayou Offshore Fund E, Ltd., and Bayou Offshore Fund F, Ltd. (collectively, the "Off-Shore Funds") were placed into liquidation under the laws of the Cayman Islands on or about September 2, 2005 (for Bayou Offshore

5

Master Fund Ltd, Bayou Offshore Fund A, Ltd., Bayou Offshore Fund B, Ltd., and Bayou Offshore Fund C, Ltd.) and on or about September 8, 2005 (for Bayou Offshore D, Ltd., Bayou Offshore E, Ltd., and Bayou Offshore F, Ltd.).

By Orders of the Grand Court of the Cayman Islands (the "Cayman Grand Court") in Cause No. 394 to 3978 of 2005 and Cause No. 403 to 405 of 2005, Gordon I. MacRae and G. James Cleaver (the "Off-Shore Liquidators") were appointed Joint Official Liquidators of the Off-Shore Funds. The Off-Shore Liquidators, members of Kroll (Cayman) Ltd. commenced an ancillary proceeding under Bankruptcy Code § 304(b) in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division on September 9, 2005. On October 5, 2005, an Order for Preliminary Injunction and Granting of Petitions Under Section 304 was entered.

The Offshore Liquidators are principally responsible for winding-up the Off-Shore Funds, coordinating distribution to the Off-Shore Funds' creditors, and pursuing the claims of the Off-Shore Funds.

**<u>The Fraudulent Activity is Admitted</u>**

Following the Bayou Entities' collapse, numerous civil and criminal investigations have been commenced by state and federal authorities. In particular, the United States Attorney for this District, the Securities and Exchange Commission and the Commodity Futures Trading Commission each have commenced separate law enforcement actions against the Bayou Entities, Israel, Marino and others alleging violations of numerous laws and regulations.

On September 29, 2005, criminal informations were filed in the District Court against Israel and Marino as a result of their activities related to the Debtors. That same day, Israel and Marino pleaded guilty to conspiracy to commit fraud, mail and wire fraud, and investment advisor fraud after acknowledging their widespread fraudulent financial reporting to investors.

**The Government's Response to the Fraud**

On May 19, 2005, the Arizona Attorney General seized approximately $100 million (United States) in suspected investor funds from several Wachovia Bank accounts in Flemington, New Jersey. The Arizona State Court entered a final order of forfeiture on September 28, 2005. On September 1, 2005, the United States Attorney for the Southern District of New York commenced a civil forfeiture action to recover these funds for the benefit of the creditors of the Bayou Entities. The $100 million remains in an interest bearing account, under the supervision and control of the Arizona Attorney General pending turn-over of the funds to the United States for distribution pursuant to an Order of Forfeiture entered in connection with the guilty pleas of Israel and Marino, wherein each were required to forfeit to the United States, pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. § 2461 all property, real and personal, that constituted or was derived from the proceeds traceable to the commission of the offenses set forth in the indictment (the "Forfeited Assets"), including specifically "approximately $100,010,673.68" forfeited by the Arizona Attorney General.

In connection with the forfeiture, James P. Shinehouse of Kroll Worldwide, Inc. was appointed as receiver (the "Government Receiver") to assist the United States Marshals Service and the Office of the United States Attorney in marshaling and liquidating the Forfeited Assets pursuant to an Order of the United States District Court for the Southern District of New York (the "District Court") dated January 6, 2006.

The Government Receiver had acknowledged, with the consent of the United States Attorney for this District and the United States Marshals Service, that he is not charged with the duty or responsibility to investigate or pursue claims against third parties on behalf of the Bayou Entities related to the fraudulent investment scheme.

**Creditors of the On-Shore
Funds Seek Official Standing**

In February 2006, following broad notice to similarly situated investors in the On-Shore Funds, the Bayou creditors formed the Unofficial Committee. The Unofficial Committee's by-laws state, in relevant part, that the Committee shall:

> A. Evaluate the need to seek support for and implementation of a process for judicial appointment of a receiver/trustee to marshal assets and make distributions to creditors;
>
> B. Monitor and work with the receiver/trustee or other fiduciary acting on behalf of the creditors to facilitate an efficient and timely forensic investigation, pursuit of claims, and if appropriate, the commencement of a bankruptcy proceeding; and
>
> C. Negotiate and formulate a liquidation plan to facilitate prompt distribution of Debtors' assets with an adequate reserve to finance the pursuit of additional assets, including claims of the Debtors or the Debtors' creditors.

By Order dated April 28, 2006, and with the consent of the United States and the input of the Government Receiver and the Off-Shore Liquidators, on motion of the Unofficial Committee, and after notice to all known creditors, the District Court appointed Mr. Marwil as the Receiver pursuant to 28 U.S.C. §§ 754, 759, and 1692 and Federal Rule of Civil Procedure 66, to take control of and become the sole and exclusive managing member of each of the Debtors. Contemporaneously with his appointment, Marwil retained Dechert LLP as his general bankruptcy and litigation counsel with the consent of the Unofficial Committee.

**The Fiduciaries Coordinate Their Efforts
to Maximize and Equalize Distributions to Defrauded Creditors**

Three Court-appointed fiduciaries are now in place to protect and enhance value for creditors of the Bayou Entities and the Bayou Off-Shore Funds. The Debtors, under the guidance and control of Mr. Marwil, are charged with, among other things, the duty to maximize the value of third party claims and achieve an equality of distribution to creditors, including defrauded

8

investors, from proceeds of third party actions and other assets of the Bayou Entities. The Government Receiver controls the Forfeited Assets, and the Off-Shore Liquidators are responsible for administering the wind-up of the financial affairs of the (non-debtor) Off-Shore funds. There is no overlap or duplication of responsibilities among the Debtors, the Government Receiver, and the Off-Shore Liquidators.

The Government Receiver has been authorized to take possession and control of the Forfeited Assets and all books and records of the Bayou Entities that were seized by various government entities in their criminal and regulatory investigations. In addition, the Government Receiver is responsible for conducting a forensic investigation and analysis of the financial affairs and corporate dealings of the Bayou Entities and identifying, preserving, marshalling, and disposing of the Forfeited Assets.

The Off-Shore Liquidators are responsible for the administration of the Offshore Funds' estates and have possession and control over all (i) claims, demands, and causes of action that are within the jurisdiction of the liquidation proceedings pending in the Cayman Grand Court, and (ii) any real property, equitable property, tangible and intangible personal property, interests, or assets of any nature that is within the jurisdiction of the liquidation proceedings now pending in the Cayman Grand Court; but specifically excluding the Forfeited Assets and any claims or assets of the Bayou Entities.

The Debtors' estate includes (a) all claims, demands, or causes of action of the Bayou Entities against third parties, including but not limited to any avoidance actions under Chapter 5 of the Bankruptcy Code, applicable state fraudulent transfer law or applicable state common law (specifically including causes of action against redemption recipients), and (b) any real property, equitable property, tangible and intangible personal property, interests, or assets of any nature,

9

wherever located; specifically excluding the Forfeited Assets and any asset of the Off-Shore Funds' estates.

These three fiduciaries are coordinating their efforts with the United States Attorney for this District, the United States Marshals Service, the Arizona Attorney General, the SEC, and the CFTC. All parties, including the Debtors, share the common goal of maximizing equitable distributions to creditors of the Bayou Entities.

Pursuant to a joint protocol, the Debtors, the Government Receiver, and the Off-Shore Liquidators intend to coordinate the administration of the various estates in a manner to maximize recoveries to creditors, minimize costs to the estates, avoid waste of court resources, and expedite distributions to creditors. In particular, the Debtors, the Government Receiver, and the Off-Shore Liquidators are working toward the: (i) identification, preservation, disposition, and realization of assets, (ii) forensic investigation and analysis of the Bayou Entities, (iii) custody, control, and use of the Bayou Entities' documents and electronic information, (iv) the implementation of a coordinated distribution process for assets to creditors of the Bayou Entities and the Off-Shore Funds, (v) the analysis and prosecution of potential third party liability claims by or on behalf of any the Bayou Entities, (vi) the analysis and prosecution of potential avoidance actions, and (vii) a process of dispute resolution in the event of a dispute between the various parties to the joint protocol.

During the period of the Debtors' existence, various investors in the Bayou Entities requested and received redemptions of principal and fictitious profits to the detriment of the remaining investor creditors. Fraudulent conveyance claims against such redemption recipients to equalize distributions to all creditors of the Bayou Entities can only be brought by the estate and not by an individual investor. The Unofficial Committee advises the Debtors that there may approximately

$250 million in such claims that the Debtors may assert on behalf of all of the creditors of the Debtors. In addition, there may be claims against other, non-investor third parties that the Debtors have standing to assert. The Debtors intend to vigorously pursue such claims on behalf of the Bayou Entities in order to make pro rata, equitable and fair distributions to the Debtors' creditors.

**Retention of Dechert**

Pursuant to Bankruptcy Code §§ 327(a), 328(a), and 329(a) and Bankruptcy Rules 2014(a) and 2016(b), the Debtors seek to obtain this Court's approval to employ and retain Dechert as their general bankruptcy and litigation attorneys in these cases.

To facilitate the successful completion of these cases, the Debtors require the services of attorneys with knowledge and experience in numerous areas of the law, including, without limitation, bankruptcy, restructuring, litigation, financing, tax, real estate, mergers and acquisitions, and general corporate and securities matters. The Debtors have selected Dechert as their counsel in these cases because of its considerable experience in such matters and have retained Dechert to advise them in connection with possible Chapter 11 filings pursuant to an engagement letter dated on May 4, 2006 (the "Engagement Letter").[2]

The Debtors are charged with certain duties pursuant to Bankruptcy Code § 1107. Because of the size and complexity of the Debtors' business, the anticipated litigation in connection therewith, and the transactions likely to arise in these proceedings, the services of Dechert will be necessary in the performance of the Debtors' duties.

**Services To Be Rendered**

The Debtors propose to retain Dechert to perform the following tasks:

---

[2] A true and correct copy of the Engagement Letter is attached hereto as <u>Exhibit C</u> and is incorporated herein by reference.

a. provide legal advice with respect to the Debtors' powers and duties as debtors-in-possession;

b. take all necessary action to protect and preserve the estates of the Debtors, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiations of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

c. prepare on behalf of the Debtors, as debtors-in-possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates;

d. evaluate, institute, assert, prosecute, defend, compromise, and/or settle claims and causes of action on behalf of the Debtors, as well as claims and causes of actions for fraudulent conveyance and other third party actions on behalf of the Debtors;

e. negotiate and draft the Plan and all documents related thereto, including, but not limited to, the disclosure statements and ballots for voting thereon;

f. take all steps necessary to confirm and implement the Plan, including, if necessary, modifications thereof and negotiating financing therefor; and

g. perform all other necessary and appropriate legal services in connection with the prosecution of these cases.

## **Professional Compensation**

Dechert's requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned professional at each professional's hourly billing rate. Subject to the Court's approval, Dechert will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates in similar matters for similar clients in effect on the date services are rendered. Set forth below are the specific current hourly rates for the primary attorneys and a general range of hourly rates for any other professionals that Dechert intends to charge the Debtors for the legal services:

| | |
|---|---|
| H. Jeffrey Schwartz............................ | $745 |
| Gary J. Mennitt ................................. | $575 |
| Elise Scherr Frejka............................. | $450 |
| Marco-Aurelio Casalins III................. | $360 |

|            |         |                  |
|------------|---------|------------------|
| Attorneys  | between | $235 and $875    |
| Paralegals | between | $100 and $250    |

The Debtors believe that Dechert's hourly rates are reasonable based upon its capabilities and experience.

In addition, Dechert charges for out-of-pocket expenses, including, but not limited to, travel (transportation, lodging, and meals), telecopier, document duplication, postage, overnight shipping, and courier expenses.

Dechert has received payments to be applied to fees and expenses incurred before the Petition Date, which fees and expenses are subject to continuing reconciliation. Any amounts in excess of such fees and expenses (the "Chapter 11 Retainer"), expected to be approximately $175,000, will be held by Dechert in a segregated interest-bearing trust account to secure the payment of Dechert's post-petition fees and expenses, as allowed by this Court. At the conclusion of Dechert's representation of the Debtors in these cases, to the extent the unpaid fees and expenses allowed by this Court do not exceed the amount of the Chapter 11 Retainer, Dechert will promptly return to the Debtors' estates that portion of the Chapter 11 Retainer that Dechert does not apply to cover such unpaid fees and expenses. The Debtors do not owe Dechert any amount for pre-petition services rendered by Dechert.

Dechert received payments in the total amount of $175,000 from the Debtors for services rendered within one year before the Petition Date (including the expected retainer amount described above). Dechert received payments in the total amount of $175,000 from the Debtors within ninety days before the Petition Date.

Dechert will make periodic applications to this Court for interim compensation in accordance with Bankruptcy Code §§ 328 and 331 and any Orders of this Court governing such matters.

**Disinterestedness and No Adverse Interest**

The Debtors have many creditors and, accordingly, Dechert may have rendered and may continue to render professional services to certain of these creditors and other parties-in-interest. Dechert has not and will not represent the separate interests of any such creditor or other party-in-interest in these cases. Additionally, Dechert's partners, counsel, associates, and staff members may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors and other parties-in-interest. For example, one or more of Dechert's partners, associates, and/or staff members may have obligations outstanding with financial institutions that are creditors of the Debtors.

To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Schwartz Declaration, the partners, associates, and other professionals of Dechert have no relationship to the Debtors or to any other party-in-interest in these cases. In the Schwartz Declaration, Dechert has represented that it neither holds nor represents any interest adverse to the Debtors' estates and that Dechert is a "disinterested person," as referenced in Bankruptcy Code § 327 and as defined in Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b), relative to these cases.

The Debtors have been advised by Dechert that it will endeavor to coordinate with the other retained professionals in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.

For the foregoing reasons, the Debtors believe that the retention of Dechert is in the best interests of the Debtors, their creditors, and their estates, and therefore, the Debtors desire to retain and employ Dechert as their general bankruptcy and litigation counsel, with Dechert's compensation to be determined upon application to this Court.

**Notice**

No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Application has been provided to: (a) the United States Trustee; (b) the Securities and Exchange Commission; (c) the Commodities Futures Trading Commission; (d) the United States Attorney's Office for the Southern District of New York; (e) counsel for the Unofficial On-Shore Creditor's Committee of the Bayou Family of Companies; (f) counsel to the Lender; (g) the Government Receiver; (h) counsel for the Off-Shore Liquidators; and (i) the creditors holding the 20 largest unsecured claims against the Debtors' estates on a consolidated basis, as identified in the Debtors' chapter 11 petitions. The Debtors submit that no other or further notice need be provided.

**Memorandum Of Law**

This Application includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted.

**No Prior Application**

No previous motion for the relief sought herein has been made to this or any other Court.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto as Exhibit D, granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

Dated: Chicago, Illinois
May 26, 2006

                Bayou Group, LLC,
                Bayou Management, LLC,
                Bayou Equities, LLC,
                Bayou Advisors, LLC,
                Bayou Superfund, LLC,
                Bayou No Leverage Fund, LLC,
                Bayou Affiliates Fund, LLC,
                Bayou Accredited Fund, LLC,
                Bayou Fund, LLC

                /s/ Jeff J. Marwil
                Jeff J. Marwil,
                Managing Member of the Debtors