| | |
|---|---|
| DECHERT LLP | **Hearing Date and Time:** |
| 30 Rockefeller Plaza | *September 27, 2006 at 9:30 A.M.* |
| New York, New York 10112 | **Objection Deadline:** |
| Telephone: (212) 698-3500 | *September 22, 2006 at 4:00 P.M.* |
| Facsimile: (212) 698-3599 | |
| H. Jeffrey Schwartz | |
| Elise Scherr Frejka (ESF-6896) | |

*Attorneys for the Debtors and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
In re:                                                           :  Chapter 11
                                                                 :
BAYOU GROUP, LLC, et al.,                                        :  Case No.: 06-22306 (ASH)
                                                                 :
                                  Debtors.                       :  Jointly Administered
                                                                 :
---------------------------------------------------------------- X

**APPLICATION FOR AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF
KLESTADT & WINTERS, LLP AS CONFLICTS COUNSEL
TO THE DEBTORS NUNC PRO TUNC TO AUGUST 25, 2006**

TO THE HONORABLE ADLAI S. HARDIN,
UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this application (the "Application") for an Order, pursuant to §§ 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), authorizing the retention and employment of Klestadt & Winters, LLP ("K&W"), as conflicts counsel <u>nunc pro tunc</u> to August 25, 2006. In support of this Application, the Debtors rely on the Declaration of Tracy L. Klestadt, a member of Dechert (the

1

"Klestadt Declaration").[1] In further support of this Application, the Debtors respectfully represent as follows:

**Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of these cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Relief Requested**

4. Pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b), the Debtors seek the entry of an order authorizing the retention and employment of K&W as conflicts counsel to the Debtors.

**Facts**

**A. The Bayou Entities Were Operated as a Fraud**

5. The Debtors are an affiliated group of entities that created, operated, comprised, and controlled private pooled investment funds (commonly known as "hedge funds"). To conceal unattractive performance and returns, the Debtors eventually operated their hedge funds in the manner of a fraudulent Ponzi scheme and engaged in a series of fraudulent actions and transactions in furtherance of this criminal scheme.

6. Following the Bayou Entities' collapse in August 2005, numerous civil and criminal investigations were commenced by state and federal authorities. In particular, the United States Attorney for this District (the "U.S. Attorney"), the Securities and Exchange

---

[1] A true and correct copy of the Klestadt Declaration is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference.

Commission (the "SEC"), and the Commodity Futures Trading Commission (the "CFTC") each commenced separate law enforcement actions against the Debtors and their principals – Samuel Israel III ("Israel") and Daniel Marino ("Marino") – alleging violations of numerous laws and regulations. On September 29, 2005, Israel and Marino pleaded guilty before the United States District Court for the Southern District of New York (the "District Court") to conspiracy to commit fraud, mail and wire fraud, and investment advisor fraud. The United States obtained broad forfeiture orders encompassing all property, interests, or assets that would otherwise be assets of the Bayou Entities (the "Forfeited Assets").[2] The District Court appointed James P. Shinehouse of Kroll Talbot Hughes (the "Government Receiver") to assist the United States Marshals Service in liquidating the Forfeited Assets.

7. The U.S. Attorney affirmatively represented to the District Court that the United States would not investigate or pursue civil claims against third parties related to the fraudulent investment scheme. Transcript at p. 7, <u>USA v. All Assets of Bayou Accredited Fund, LLC</u>, 05 CV 7722 (CM) (S.D.N.Y. Apr. 18, 2006).

**B.     The Unofficial Committee was Formed to Mitigate Massive
        Losses by Setting up the Pursuit of Claims Against Third Parties**

8. In February 2006, following broad notice to creditors of the Bayou Hedge Funds, more than sixty creditors of the Bayou Entities holding in excess of $130 million in claims organized the Unofficial On-Shore Creditors Committee (the "Unofficial Committee"). The primary purpose of the Unofficial Committee was to mitigate its constituency's massive financial

---

[2]     The Bayou family of companies also consists of various off-shore hedge funds that are exempted limited companies organized and incorporated under the laws of the Cayman Islands (collectively, the "Off-Shore Funds"). The Off-Shore Funds were placed into liquidation under the laws of the Cayman Islands and Gordon I. MacRae and G. James Cleaver (the "Off-Shore Liquidators") were appointed Joint Official Liquidators of the Off-Shore Funds. The Off-Shore Liquidators, members of Kroll (Cayman) Ltd., commenced an ancillary proceeding under

losses as expeditiously and efficiently as practicable by way of obtaining an official, independent, disinterested fiduciary to go inside the Bayou Entities so that the Bayou Entities could initiate and maintain Chapter 11 cases to liquidate Chapter 5 claims and other choses in action outside the scope of the Government Receiver's charge for the benefit of all defrauded creditors.

**C.     The District Court Grants Requested Relief and
        Appoints Marwil as Managing Member of the Bayou Entities**

9.      The Unofficial Committee filed a civil action with the District Court seeking the appointment of Jeff J. Marwil ("Marwil") as a fiduciary of the Bayou Entities to marshal and prosecute the avoidance power claims in favor of the defrauded creditors community so as to efficiently mitigate their losses.  Complaint, <u>Unofficial On-Shore Creditors' Committee v. Bayou Group, LLC</u>, 06-cv-2379, subsequently consolidated with <u>In re Bayou</u>, 06 MDL 1755; <u>see</u> Order of Consolidation entered April 21, 2006.  Broad notice of the case commencement was given to all known creditors of the Bayou Entities, parties-in-interest therein, and the United States.

10.     At hearings before the District Court on April 18, 2006 and April 28, 2006, attended by, <u>inter alia</u>, the U.S. Attorney (both criminal and civil divisions), the SEC, and the CFTC, the Unofficial Committee advocated for the appointment of Marwil as, <u>inter alia</u>, managing member of each of the Bayou Entities to launch and navigate through conclusion insolvency proceedings for each of the Bayou Entities.

11.     Immediately following the April 28, 2006 hearing, the District Court entered an Order (the "District Court Order") pursuant to 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, and the Court's inherent authority, appointing Marwil

---

Bankruptcy Code § 304(b) in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division on September 9, 2005 and preliminary injunctions were thereafter entered.

the sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities, including without limitation, the authority to petition for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Code"), for any or all of the Bayou Entities and in connection therewith be and be deemed a debtor-in-possession for any or all of the Bayou Entities in proceedings under Chapter 11 of the Code, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

District Court Order ¶ 7(e).

12. In discharge of such judicially-memorialized legal capacity as managing member of each of the Bayou Entities, Marwil has devoted extensive time and effort to analyzing the Bayou Entities, devising a litigation and business strategy, reviewing the financial and operational history of the Bayou Entities, managing the Bayou Entities, and commencing these cases. Marwil's conduct as managing member of the Debtors has resulted in an appropriately ambitious litigation strategy aimed at achieving maximum recovery for the benefit of all creditors in an efficient, expeditious manner so as to mitigate their losses to the extent practicable.

**D.** **The Bankruptcy Cases**

13. On May 30, 2006 (the "Petition Date"), the Debtors filed with this Court separate voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Pursuant to Bankruptcy Rule 1015(b), the Debtors' cases have been procedurally consolidated and are being jointly administered by this Court. Under Marwil's control as managing member, the Debtors are debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

14. On June 15, 2006, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") consisting of five members, four of whom were voting

5

members of the Unofficial Committee, which, as set forth above, successfully obtained the District Court Order appointing Marwil managing member of each of the Bayou Entities.

15. The Debtors have focused their efforts since the Petition Date on continuing their aggressive litigation strategy aimed at recovery, redistribution, and equalization of assets for defrauded creditor investors. On the Petition Date, the Debtors commenced four adversary proceedings asserting fraudulent conveyance claims against certain investors who collectively had redeemed more than $3.7 million from the Bayou Hedge Funds. The Debtors' litigation efforts have continued and there are currently 56 pending adversary proceeding seeking to recover in excess of $50 million for the benefit of creditors. In the coming days, the Debtors intend to commence additional adversary proceedings against those investors that made complete redemptions of their investments within two years of the Petition Date.

16. Pursuant to an Order of this Court dated May 31, 2006, the Debtors were authorized to employ and retain Dechert LLP ("Dechert") as their general bankruptcy and litigation counsel.

## Retention of K&W

17. The Debtors seek court approval, pursuant to sections 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(d), to employ and retain K&W as its conflicts counsel in connection with these Chapter 11 cases to handle matters that the Debtors may encounter which are not appropriately handled by the Debtors' general bankruptcy and litigation counsel, Dechert, because of a potential or actual conflict of interest.

18. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of K&W as their conflicts counsel to perform services that will be necessary during these chapter 11 cases in accordance with K&W's normal hourly rates and policies in effect when K&W renders the services or incurs the expenses.

19. The Debtors have selected K&W as conflicts counsel because of the firm's experience in business reorganizations under chapter 11 of the Bankruptcy Code. In addition, K&W possesses extensive expertise, experience and knowledge practicing before this bankruptcy court. The relationship between K&W will be governed by an engagement letter dated August 25, 2006 (the "Engagement Letter").[3] The Debtors have requested that K&W commence work immediately and the Debtors request authority to retain K&W <u>nunc</u> <u>pro</u> <u>tunc</u> to August 25, 2006.

**Services To Be Rendered**

20. Subject to the Court's approval, K&W will render professional services to the Debtors for only the discrete matters assigned to it for which Dechert has a conflict of interest, which may include, but are not limited to the following tasks:

    a. provide legal advice with respect to the Debtors' powers and duties as debtors-in-possession;

    b. take all necessary action to protect and preserve the estates of the Debtors, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiations of disputes in which the Debtors are involved, and the preparation of objections to claims filed against the Debtors' estates;

    c. prepare on behalf of the Debtors, as debtors-in-possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates;

    d. evaluate, institute, assert, prosecute, defend, compromise, and/or settle claims and causes of action on behalf of the Debtors, as well as claims and causes of actions for fraudulent conveyance and other third party actions on behalf of the Debtors;

    e. negotiate and draft the Plan and all documents related thereto, including, but not limited to, the disclosure statements and ballots for voting thereon;

---

[3] A true and correct copy of the Engagement Letter is attached hereto as <u>Exhibit B</u> and is incorporated herein by reference.

  f. take all steps necessary to confirm and implement the Plan, including, if necessary, modifications thereof and negotiating financing therefor; and

  g. perform all other necessary and appropriate legal services in connection with the prosecution of these cases.

### **Professional Compensation**

21. K&W's requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned professional at each professional's hourly billing rate. Subject to the Court's approval, K&W will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates in similar matters for similar clients in effect on the date services are rendered. Set forth below are the specific current hourly rates for the primary attorney and a general range of hourly rates for any other professionals that K&W intends to charge the Debtors for the legal services:

| | | |
|---|---|---|
| Tracy L. Klestadt ............................... | | $475 |
| Attorneys .......................................... | between | $175 and $475 |
| Paralegals .......................................... | | $125 |

The Debtors believe that K&W's hourly rates are reasonable based upon its capabilities and experience.

22. In addition, K&W charges for out-of-pocket expenses, including, but not limited to, travel (transportation, lodging, and meals), telecopier, document duplication, postage, overnight shipping, and courier expenses.

23. K&W has not received a retainer nor has K&W received any payments from the Debtors within one year before the Petition Date.

24. K&W will make periodic applications to this Court for interim compensation in accordance with Bankruptcy Code §§ 328 and 331 and any Orders of this Court governing such matters.

### **Disinterestedness and No Adverse Interest**

25. The Debtors have many creditors and, accordingly, K&W may have rendered and may continue to render professional services to certain of these creditors and other parties-in-interest. K&W has not and will not represent the separate interests of any such creditor or other party-in-interest in these cases. Additionally, K&W partners, associates, and staff members may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors and other parties-in-interest. For example, one or more of K&W's partners, associates, and/or staff members may have obligations outstanding with financial institutions that are creditors of the Debtors.

26. To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Klestadt Declaration, the partners, associates, and other professionals of K&W have no relationship to the Debtors or to any other party-in-interest in these cases. In the Klestadt Declaration, K&W has represented that it neither holds nor represents any interest adverse to the Debtors' estates and that K&W is a "disinterested person," as referenced in Bankruptcy Code § 327 and as defined in Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b), relative to these cases.

27. The Debtors have been advised by K&W that it will endeavor to coordinate with the other retained professionals in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.

28. For the foregoing reasons, the Debtors believe that the retention of K&W is in the best interests of the Debtors, their creditors, and their estates, and therefore, the Debtors desire to retain and employ Dechert as their general bankruptcy and litigation counsel, with Dechert's compensation to be determined upon application to this Court.

### Notice

29. Notice of this Application has been given in accordance with the Order Establishing Noticing Procedures dated May 31, 2006. The Debtors submit that no other or further notice need be provided.

### Memorandum Of Law

30. This Application includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted.

### No Prior Application

31. No previous motion for the relief sought herein has been made to this or any other Court.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto as <u>Exhibit C</u>, granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

Dated: New York, New York
      August 25, 2006

          DECHERT LLP

          By: /s/ Elise Scherr Frejka
              H. Jeffrey Schwartz (HJS-4105)
              Gary J. Mennitt (GM-1141)
              Elise Scherr Frejka (ESF-6896)
              Jonathan D. Perry (JP-0863)
              30 Rockefeller Plaza
              New York, New York  10112
              Telephone:  (212) 698-3500
              Facsimile:  (212) 698-3599

              *Attorneys for the Debtors and*
              *Debtors-in-Possession*