UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
In re:                                                       : Chapter 11
                                                             :
BAYOU GROUP, LLC, et al.,                                    : Case No.: 06-22306 (ASH)
                                                             :
                    Debtors.                                 : Jointly Administered
                                                             :
------------------------------------------------------------ X
BAYOU NO LEVERAGE FUND, LLC,                                 : Adv. Proc. No.: 06-08430 (ASH)
                                                             :
                    Plaintiff,                               :
                                                             :
          -against-                                          :
                                                             :
                                                             :
PETER HAJE IRA and PETER HAJE,                               :
                                                             :
                    Defendants.                              :
------------------------------------------------------------ X

## Settlement Agreement and Release

This Settlement Agreement and Release (the "Agreement") is made and entered effective as of the date indicated below, by and between Bayou Group, LLC, Bayou Management, LLC, Bayou Advisors, LLC, Bayou Equities, LLC, Bayou Fund, LLC ("Bayou Fund"), Bayou Superfund, LLC, ("Bayou Superfund"), Bayou No Leverage Fund ("Bayou No Leverage"), LLC, Bayou Affiliates Fund, LLC ("Bayou Affiliates"), and Bayou Accredited Fund, LLC ("Bayou Accredited," and together with Bayou Fund, Bayou Superfund, Bayou No Leverage, and Bayou Affiliates, the "Bayou Hedge Funds") (collectively, the "Debtors") and Peter Haje IRA (the "IRA") and Peter Haje ("Haje," and together with IRA, the "Defendants"), on the other hand.

WHEREAS, on or about June 17, 2003, the IRA invested $500,000 to acquire certain interests in Bayou No Leverage (the "Principal Investment"); and

WHEREAS, on or about December, 2004, the IRA requested redemption and withdrawal of its interests in Bayou No Leverage; and

WHEREAS, on or about January 12, 2005, Bayou No Leverage made a transfer of its property in the amount of $549,900 to the IRA (the "First Redemption Payment"); and

WHEREAS, on or about June 8, 2005, Bayou No Leverage made a transfer of its property in the amount of $60,926 to the IRA (together with the First Redemption Payment, the "Redemption Payments"); and

WHEREAS, the Redemption Payments were equal to the amount of the Investment plus purported appreciation on the Investment of $110,826 (the "Fictitious Profits"); and

WHEREAS, on May 30, 2006 (the "Petition Date"), each of the Debtors filed separate voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code §§ 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

WHEREAS, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors' cases have been procedurally consolidated and are being jointly administered by the Bankruptcy Court as In re Bayou Group, LLC, et al., Case No. 06-22306 (ASH) (the "Bankruptcy Case"). Under the control of Jeff J. Marwil, as the sole and exclusive managing member and authorized representative of each of the Debtors (the "Managing Member"), the Debtors are debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108; and

WHEREAS, on August 21, 2006, Bayou No Leverage commenced the above-captioned adversary proceeding (the "Adversary Proceeding") in the Bankruptcy Court against the Defendants with the filing and service of a complaint (the "Complaint"). On or about October 27, 2006, Bayou No Leverage filed an Amended Complaint against the Defendants in the Adversary Proceeding (the "Amended Complaint"). Through the Adversary Proceeding, the Debtors sought, among other things, to (a) avoid and preserve the Redemption Payments, (b) set aside the Redemption Payments, and (c) recover the Redemption Payments from the Defendants for the benefit of the estates of the Debtors; and

WHEREAS, on October 16, 2008, the Bankruptcy Court issued Decisions on Cross-Motions for Summary Judgment (the "Summary Judgment Decision") wherein (a) summary judgment was awarded in favor of Bayou No Leverage on its (i) First Claim for Relief in the Amended Complaint avoiding and recovering the full amount of the Redemption Payments, including the Investment and Fictitious Profits, totaling $610,826.00 under Bankruptcy Code §§ 548(a)(1)(A) and 550, and (ii) Second Claim for Relief in the Amended Complaint avoiding and recovering that portion of the Redemption Payments consisting of Fictitious Profits in the amount of $110,826.00 under Bankruptcy Code §§ 548(a)(1)(B) and 550, and (b) the cross-motion for summary judgment of the Defendants was denied in its entirety and the affirmative defense of the Defendants under Bankruptcy Code § 548(c) was dismissed; and

WHEREAS, the Debtors' pre-petition principals – Samuel Israel III, Daniel E. Marino, and James Marquez – have pled guilty to several federal criminal counts in connection with the investment fraud involving the Debtors (the "Pre-Petition Bayou Fraud"); and

WHEREAS, the parties understand that, in connection with the criminal prosecution of Israel, Marino, and Marquez, the United States of America has seized more than $110 million (the "Forfeited Assets") relating to the Pre-Petition Bayou Fraud through civil and criminal forfeiture orders; and

WHEREAS, certain of the Forfeited Assets (the "Government Funds") have been disbursed by the United States to certain Bayou investors and a portion of the Government Funds

have been reserved pending resolution of certain adversary proceedings in the Bankruptcy Case, including the Adversary Proceeding, pursuant to criminal restitution orders (see 18 U.S.C. § 3663A); and

WHEREAS, in view of the costs and uncertainty associated with continued litigation of the Adversary Proceeding, including any appeal from the Summary Judgment Decision, the parties have agreed to settle their differences, claims, and disputes, including the disputes embodied in or related to the Adversary Proceeding, the Investment, and the Redemption Payments upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants, promises, and obligations set forth herein, and other good and valuable consideration, and subject to Bankruptcy Court approval, the parties hereby agree as follows:

1. The Debtors will submit this Agreement to the Bankruptcy Court for approval through a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion"). The 9019 Motion shall be filed on notice to all parties-in-interest in the Bankruptcy Case, and shall request entry of an order by the Bankruptcy Court approving all of the terms of this Agreement. No party hereto shall contest or object to the Bankruptcy Court's approval hereof. In the event the Bankruptcy Court declines to approve this Agreement, this Agreement shall be null and void.

2. Pending the hearing and determination of the 9019 Motion, all deadlines are extended *sine die*, including, without limitation, the time within which a final judgment in the Adversary Proceeding on account of the Summary Judgment Decision shall be submitted to the Bankruptcy Court.

3. The IRA shall pay $521,101.00 (the "Settlement Payment"), which is an amount comprised of 100% of the portion of the Redemption Payments consisting of Fictitious Profits ($110,826.00) and $410,275.00 of the Redemption Payments consisting of the Principal Investment, to the Debtors within ten (10) business days after the Bankruptcy Court's order approving this Agreement becomes final and non-appealable. In the event of a default with respect to the payment of the Settlement Payment, the Defendants shall be jointly and severally liable for the Settlement Payment and any costs incurred by the Debtors in the collection of the Settlement Payment, including reasonable attorney's fees.

4. Effective upon receipt by the Debtors of the Settlement Payment, (a) the Defendants, for themselves and, as applicable, their past and present trustees, officers, directors, partners, employees, shareholders, agents, executors, sureties, insurers, attorneys, administrators, advisors, heirs, predecessors, successors, parent companies, subsidiaries, affiliates and/or assigns hereby releases, acquits, and absolutely discharge the Debtors and the Managing Member (collectively, the "Debtor Releasees"), from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims, known or unknown, arising out of or in any way related to the Investment or the Redemption Payments, (b) the Defendants covenant that no suit shall be brought, nor claim asserted, against the Debtor Releasees based on the Principal Investment or the Redemption Payments except for breach of this Agreement, and (c) the Defendants waive the

3

right to assert any claim in the Bankruptcy Case on account of the Settlement Payment, the Principal Investment or the Redemption Payments whether pursuant to Bankruptcy Code § 502(h) or otherwise.

5. Effective upon receipt by the Debtors of the Settlement Payment, (a) the Debtors, and the Managing Member hereby release, acquit, and absolutely discharge the Defendants, and, as applicable, their past and present trustees, officers, directors, partners, employees, shareholders, agents, executors, sureties, insurers, attorneys, administrators, advisors, heirs, predecessors, successors, parent companies, subsidiaries, affiliates and/or assigns (collectively, the "Defendant Releasees"), from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and all claims, known or unknown, arising out of or in any way related to the Investment or the Redemption Payments, including but not limited to, claims to avoid or recover the Investment or the Redemption Payments or to place any lien, trust or encumbrance thereon, (b) the Debtors shall promptly cause the Adversary Proceeding to be dismissed with prejudice and without costs, and (c) the Debtors and the Managing Member each covenant that no further suit shall be brought, nor claim asserted, by any of them against the Defendant Releasees based on the Principal Investment or the Redemption Payments except for breach of this Agreement.

6. This Agreement is not contingent upon the Defendants' ability to participate in a distribution of the Government Funds, and the Debtors make no representation that the Defendants will obtain such a distribution. Nevertheless, nothing in this Agreement is intended to or shall be interpreted to preclude the Defendants' ability to participate in a distribution of the Government Funds, or to receive or retain distributions of the Government Funds. Subject to the foregoing, upon receipt of the Settlement Payment, if requested by the Defendants, the Debtors will represent to the District Court and/ or governmental entities overseeing or administering the distribution of the Government Funds that the Debtors have received the Settlement Payment and that it is the intention and expectation of the parties to this Agreement that, by virtue of Defendants' payment of that portion of the Settlement Payment that constitutes Principal Investment, Defendants will share in the distribution of the Government Funds as a victim of the Bayou Pre-Petition Fraud.

7. Each party hereto represents and warrants that as of the date of execution of this Agreement, the execution and delivery of this Agreement has been duly authorized, that all necessary approvals have been granted, save only for the approval of the Bankruptcy Court, that any and all necessary actions have been taken, and that the undersigned has full and complete authority to enter into this Agreement on behalf of its respective party and to bind such party.

8. This Agreement, and all of its terms and provisions, shall be binding upon and inure to the benefit of the parties, and their respective successors, assigns, heirs, executors, and administrators, including, without limitation, any Chapter 11 or Chapter 7 trustee appointed for the Debtors.

9. Each party hereto warrants and represents that no other person or entity has any interest in the matters that such party releases herein, and that such party has not assigned or transferred or purported to assign or transfer to any person or entity all or any portion of the claims that such party releases hereby.

10. Each party hereto warrants, represents, and agrees that in executing this Agreement, it does so with the full knowledge of any and all rights that it may have with respect to the controversies herein compromised and it has received independent legal advice from its attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts.

11. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute one and the same instrument. An electronically transmitted facsimile of any signature shall be as binding as an original signature.

12. This Agreement may not be amended or modified other than in writing executed by all the parties.

13. This Agreement contains the entire agreement between the parties with respect to its subject matter, and expressly supersedes any and all prior agreements, written or oral. Any prior or contemporaneous agreements, contracts, promises, representations and statements among the parties hereto or their representatives as to the subject matter hereof are merged into this Agreement, and no oral statements, prior written drafts of this Agreement, or other writing, correspondence or memoranda shall be used to construe or interpret any provision hereof or of any related document.

14. This Agreement is a compromise and settlement of disputed claims and is the product of arms'-length negotiations. The parties understand and agree that the Settlement Payment made shall not constitute or be construed as an admission or adjudication, express or implied, of any liability whatsoever with respect to any claims that are the subject matter of this Agreement, or any issue of fact, law, or liability of any type or nature with respect to any matter whether or not referred to herein, and none of the parties hereto has made such an admission. If the Agreement is not approved by the Bankruptcy Court, it shall not be used or relied upon for any purpose other than the enforcement of rights under this paragraph. The parties shall not contest that this Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by the Federal Rule of Evidence 408 and any similar state law, statute, rule, regulation, or other provision. Following Bankruptcy Court approval, this Agreement shall not be admissible in any proceeding other than a proceeding initiated solely for the purpose of enforcing the terms of this Agreement.

15. This Agreement shall be construed and governed under the laws of the State of New York.

16. This Agreement has been fully negotiated by the parties. Each party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

17. By execution of this Agreement, each party acknowledges that if any of the provisions of paragraphs 1 through 10 of this Agreement shall be found to be invalid or unenforceable for any reason, this Agreement shall be null and void. Excepting the provisions of

paragraphs 1 through 10, if any other provision of this Agreement is found invalid or unenforceable for any reason, such provision may be severed from the remainder of this Agreement and the remaining provisions enforced as written to effectuate the purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed, and represent the signatories hereunto to be duly authorized, all as of the date of execution.

Dated: Chicago, Illinois
November 18, 2008

BAYOU GROUP, LLC, BAYOU MANAGEMENT LLC, BAYOU ADVISORS, LLC, BAYOU EQUITIES, LLC, BAYOU FUND, LLC, BAYOU SUPERFUND, LLC, BAYOU NO LEVERAGE FUND, LLC, BAYOU AFFILIATES FUND, LLC, AND BAYOU ACCREDITED FUND, LLC

By: _____
Jeff J. Marwil,
as Managing Member of each of the Debtors

Dated: November 17, 2008

PETER HAJE IRA
PETER HAJE

_____
Peter R. Haje
individually
& for IRA

7