DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Gary J. Mennitt
Shmuel Vasser
Jonathan D. Perry

*Attorneys for the Plaintiff/Debtors and Debtors-in-Possession*

*Hearing Date & Time: June 16, 2009 at 10:00 A.M.*
*Objection Deadline: June 11, 2009 at 5:00 P.M.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU GROUP, LLC, et al., | Case No.: 06-22306 (RDD) |
| Debtors. | Jointly Administered |
| BAYOU MANAGEMENT, LLC, | Adv. Proc. No.: 08-08292 (RDD) |
| Plaintiff, | |
| -against- | |
| ROBERT B. NICHOLS, ELLEN M. NICHOLS, SAMUEL ISRAEL III, JOHN DOES 1-5, | |
| Defendants. | |

**MOTION OF THE PLAINTIFF/DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AN ORDER AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT BETWEEN BAYOU MANAGEMENT AND ELLEN M. NICHOLS**

Bayou Group, LLC ("Bayou Group"), Bayou Management, LLC ("Bayou Management"), Bayou Advisors, LLC ("Bayou Advisors"), Bayou Equities, LLC ("Bayou Equities"), Bayou Fund, LLC ("Bayou Fund"), Bayou Superfund, LLC ("Bayou Superfund"), Bayou No Leverage Fund, LLC ("Bayou No Leverage Fund"), Bayou Affiliates Fund, LLC ("Bayou Affiliates Fund"), and Bayou Accredited Fund, LLC ("Bayou Accredited Fund," and together with Bayou Fund, Bayou Superfund, Bayou No Leverage Fund, and Bayou Affiliates Fund, the "Bayou Hedge Funds") (collectively, the "Bayou Entities" or the "Debtors"), by and through their counsel, Dechert LLP, submit this motion (the "Motion")[1] for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement agreement attached hereto (the "Nichols Settlement Agreement"), by and between Bayou Management, the United States of America (the "Government") and adversary proceeding defendant Ellen M. Nichols ("Ellen Nichols").

In support of the Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. On or about July 8, 2004, Samuel Israel caused $120 million to be transferred from Bayou Management to a bank account in Israel's name at Deutsche Postbank in Germany. Shortly thereafter, Israel transferred $10 million of the $120 million from the Israel Postbank Account to Robert B. Nichols ("Robert Nichols") and Ellen Nichols (together with Robert Nichols, the "Nichols").

---

[1] The factual and legal assertions herein are solely those of the Debtors. Ellen Nichols's and the Government's support of the approval of the Nichols Settlement Agreement shall not be deemed their concurrence with the Debtors' recitations on these matters.

2

2.      In August 2007, Israel's interest in $1,053,604.13 in a Nichols' HSBC account was forfeited to the Government. In April 2008, the Nichols filed a Verified Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) for return of the funds in the HSBC Account. In May 2008, Bayou Management commenced this adversary proceeding (the "Adversary Proceeding") against, *inter alia*, seeking to recover under sections 548 and 550 of the Bankruptcy Code the $10 million transferred to the Nichols. The Adversary Proceeding was subsequently consolidated with the forfeiture proceedings in the United States District Court for the Southern District of New York (the "District Court"). In February 2009, Robert Nichols died.

3.      As embodied in the Nichols Settlement Agreement, which has been entered into by and between Bayou Management, the Government and Ellen Nichols and has been "so ordered" by the District Court, once the Bankruptcy Court's order approving the Nichols Settlement Agreements becomes final and non-appealable, Ellen Nichols will pay $1 million to Bayou Management. As detailed below, the Nichols Settlement Agreement also provides for the forfeiture to the Government of bank accounts holding approximately $3 million and payment by Ellen Nichols to the Government of an additional $500,000.

4.      The Debtors have concluded that the Nichols Settlement Agreement serves the best interests of the Debtors' estates in light of Ellen Nichols' agreement to pay $1 million to Bayou Management and the ancillary economic benefit to the Debtors' creditors from forfeiture of the $3.5 million in assets to the Government, and the costs of further litigating the factual and legal issues, including a potential jury trial, in this Adversary Proceeding. Most importantly, the Debtors have entered into the Nichols Settlement Agreement in light of the anticipated difficulty

and cost of collecting from the Nichols any judgment awarded to Bayou Management in this Adversary Proceeding.

## FACTS

**A.     The Debtors Were Fraudulently Operated Pre-Petition**

5.     The Debtors are an affiliated group of entities that created, operated, comprised, and controlled private pooled investment funds.  The Debtors were operated as a massive fraudulent investment scheme that induced investments of hundreds of millions of dollars into the Bayou Hedge Funds.

**B.     The Criminal Prosecution of the Debtors' Pre-Petition Principals and
the Government Distribution of Forfeited Assets to Bayou Investors**

6.     The Debtors' three pre-Petition principals – Samuel Israel III, Daniel E. Marino, and James Marquez – have pleaded guilty in the District Court to conspiring to defraud investors in connection with the operations of the Bayou Hedge Funds.  Israel and Marino further pleaded guilty in this District to federal counts of mail and wire fraud, investment advisor fraud, and conspiracy to commit fraud, in connection with their operation of the Bayou Hedge Funds.  The Debtors' pre-petition principals have all been sentenced, orders of restitution have been entered against them, and each is currently incarcerated.

7.     In connection with the guilty pleas of Israel, Marino, and Marquez, the District Court entered preliminary orders of forfeiture (the "Forfeiture Orders"), which required Israel, Marino, and Marquez to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all real and personal property that constituted or was derived from the proceeds traceable to the commission of the offenses set forth in the indictment (the "Forfeited Assets").

8.     The United States has liquidated certain of the Forfeited Assets into a restitution fund (the "Government Restitution Fund"). The Debtors' understanding is that, beginning in July 2008, the United States has made distributions, equal to approximately 28% of investment principal, to victims of the Pre-Petition Bayou Fraud from the Government Restitution Fund. The Debtors further understand that, in addition, a reserve was established within the Government Restitution Fund for the benefit of contingent victims, such as adversary proceeding defendants who return investment principal to the Debtors' estates.

**C.  The Unofficial Committee was Formed to Mitigate Massive
      Losses by Setting up the Pursuit of Claims Against Third Parties**

9.     In February 2006, following broad notice to creditors of the Bayou Hedge Funds, more than sixty creditors of the Debtors holding in excess of $130 million in claims organized the Unofficial On-Shore Creditors Committee (the "Unofficial Committee"). The primary purpose of the Unofficial Committee was to mitigate its constituency's massive financial losses as expeditiously and efficiently as practicable. Among other things, the Unofficial Committee sought an official, independent, disinterested fiduciary to manage the Debtors so that the Debtors could initiate and maintain Chapter 11 cases to liquidate Chapter 5 claims and other choses in action outside the scope of the Government Receiver's charge for the benefit of all defrauded creditors.

**D.  The District Court Grants Requested Relief and
      Appoints Marwil as Managing Member of the Bayou Entities**

10.    The Unofficial Committee filed a civil action with the District Court seeking the appointment of Jeff J. Marwil ("Marwil") as a fiduciary of the Debtors to marshal and prosecute the avoidance power claims in favor of the defrauded creditors community so as to efficiently mitigate their losses. Complaint, Unofficial On-Shore Creditors' Committee v. Bayou Group, LLC, 06-cv-2379, subsequently consolidated with In re Bayou, 06 MDL 1755; see Order of

Consolidation entered April 21, 2006. Broad notice of the case commencement was given to all known creditors of the Debtors, parties-in-interest therein, and the United States.

11. At hearings before the District Court on April 18, 2006, and April 28, 2006, attended by, <u>inter</u> <u>alia</u>, the U.S. Attorney (both criminal and civil divisions), the SEC, and the CFTC, the Unofficial Committee advocated for the appointment of Marwil as, <u>inter</u> <u>alia</u>, managing member of each of the Debtors to launch and navigate through conclusion insolvency proceedings for each of the Debtors.

12. Immediately following the April 28, 2006 hearing, the District Court entered an Order (the "District Court Order") pursuant to 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, and the Court's inherent authority, appointing Marwil:

> the sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities, including without limitation, the authority to petition for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code"), for any or all of the Bayou Entities and in connection therewith be and be deemed a debtor-in-possession for any or all of the Bayou Entities in proceedings under Chapter 11 of the Code, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

District Court Order ¶ 7(e).

13. As managing member of each of the Debtors, Marwil analyzed the Debtors, devised a litigation and business strategy, reviewed the financial and operational history of the Debtors, managed the Debtors, and commenced these cases and adversary proceedings seeking to mitigate investor losses.

### E. The Bankruptcy Cases

14. On May 30, 2006 (the "Petition Date"), the Debtors filed with this Court separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Bankruptcy Rule 1015(b), the Debtors' cases have been procedurally consolidated and are being jointly administered by this Court. Under Marwil's control as managing member, the Debtors are debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

15. On June 15, 2006, the United States Trustee for Region 2 appointed the Official Unsecured Creditors' Committee (the "Committee") consisting of five members, four of whom were voting members of the Unofficial Committee, which, as set forth above, had previously successfully obtained the District Court Order appointing Marwil managing member of each of the Bayou Entities.

### F. The Adversary Proceedings

16. Since the Petition Date, the Debtors have commenced 131 adversary proceedings against certain redeeming investors who received redemption payments from the Debtors within two years of the Petition Date.

17. Subsequently, on February 29, 2008, the Debtors commenced an additional 47 adversary proceedings seeking the return of Purported Profits (see definition below) against certain redeeming investors who received at least one redemption payment from the Debtors between two and six years of the Petition Date.

18. To date, the Debtors have obtained Bankruptcy Court approval of more than 125 separate settlement agreements resulting in the recovery by the Debtors of over $37,000,000.

### G. The Adversary Proceeding Against the Nichols

19. On or about July 8, 2004, Samuel Israel caused $120 million (the "$120 Million") to be transferred from Bayou Management to a bank account in Israel's name at Deutsche Postbank in Germany (the "Israel Postbank Account").

20. On or about July 19, 2004, Israel transferred $10 million of the $120 Million from the Israel Postbank Account to the Nichols ("the Nichols Transfer").

21. On August 3, 2007, the District Court, in *United States v. Israel*, 05 Cr. 1039 (CM) (the "Forfeiture Proceeding"), entered the Third Preliminary Order of Forfeiture, which forfeited to the United States of America (the "Government") Israel's interest in $1,053,604.13 in United States currency in account #400515-57409731 in the name of "Robert B. and Ellen M. Nichols" at HSBC Bank PLC (the "HSBC Account").

22. On April 17, 2008, the Nichols filed a Verified Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) in the Forfeiture Proceeding with respect to the HSBC Account.

23. On May 30, 2008, Bayou Management commenced this Adversary Proceeding in the Bankruptcy Court against, *inter alia*, the Nichols with the filing and service of a complaint (the "Complaint"). The Complaint alleged that Israel made the transfer of the $120 Million to the Israel Postbank Account with actual intent to hinder, delay and defraud the investors in the Bayou Hedge Funds by misappropriating for himself the $120 Million, which was owed to the Bayou Hedge Funds and the Bayou Hedge Funds' investor creditors, and that such transfer is

therefore avoidable as an actual fraudulent conveyance under section 548(a)(1)(A) of the Bankruptcy Code.

24. The Complaint further alleged that the Nichols were the immediate or mediate transferees of the $10 million portion of the $120 Million referred to herein as the Nichols Transfer, and that the Nichols did not take the Nichols Transfer for value or in good faith. The Complaint sought to recover the Nichols Transfer (amounting to $10 million) from the Nichols pursuant to section 550 of the Bankruptcy Code.

25. By Order dated July 14, 2008, the District Court withdrew the reference in the Adversary Proceeding and consolidated the Adversary Proceeding with the Forfeiture Proceeding. The Adversary Proceeding was assigned docket number 08 Civ. 6036 (CM).

26. Between September and December 2008, the parties engaged in extensive document discovery concerning the Nichols Transfer and the tracing and disposition of the $10 million constituting the Nichols Transfer. In addition, Bayou Management and the Government took the deposition of Robert Nichols and Ellen Nichols.

27. Based on the discovery conducted by Bayou Management and the Government, the Government sought forfeiture of additional assets held by the Nichols.

28. On December 5, 2008, the District Court entered the Preliminary Order of Forfeiture as to Prescott Valley Property in the Forfeiture Proceeding, which forfeited to the Government Israel's interest in the property known as 9750 East Windmill Acres Road, Prescott Valley, Arizona, with Yavapai County Assessor parcel identification numbers 103-01-114-4 and 103-01-114E-9, up to $2.5 million (the "Prescott Valley Property").

29. On February 10, 2009, the District Court in the Forfeiture Proceeding entered the Preliminary Order of Forfeiture as to the Nichols Standard Chartered Account Funds and a Toyota FJ Cruiser, which forfeited to the Government Israel's interest in (a) all funds in account #77-0-000786-2, in the name of "Mr. Nichols, Robert Booth &/or Mrs. Nichols, Ellen Marie Hopko" at Standard Chartered Bank in Singapore up to $1,999,994.19 (the "Nichols Standard Chartered Account Funds") and (b) a 2007 Toyota FJ Cruiser with Vehicle Identification Number JTEBU11F470016536 (the "Toyota FJ Cruiser"). On February 12, 2009, the Government seized the Toyota FJ Cruiser, pursuant to a seizure warrant issued by the District Court in the Forfeiture Proceeding.

30. On February 10, 2009, the District Court in the Forfeiture Proceeding entered the Restraining Order as to Unrestrained Nichols Accounts, which restrained Israel, the Nichols, and others from transferring, or taking any other action that would have the effect of depreciating, damaging, or in any way diminishing the value of the following property (collectively, the "Restrained Accounts"):

    a. All funds in a client trust account held for the benefit of a trust in the name of Ginomai by the Law Offices of Simone & Roos at Citibank;

    b. All funds in account number 45-250563 in the name of "Ellen M. Nichols and Robert B. Nichols" at First Hawaiian Bank;

    c. All funds in account number 0019-692272 in the name of "Robert B. Nichols and Ellen M. Nichols aka Ellen M. Hopko" at Bank of Hawaii;

    d. All funds in account number 004430766708780 in the name of "The Ginomai Living 2004 Trust–Robert B. Nichols, Trustee and Ellen M. Nichols, Trustee" at Bank of America, N.A.;

   e.  All funds in account number 80-293216-76 in the name of "Robert B. Nichols, Ellen M. Nichols and Joseph A. Hopko" at California Bank and Trust; and

   f.  All funds in account number 3800117351 in the name of "Neos International LLC c/o Ellen M. Nichols" at California Bank and Trust.

  31. On March 5, 2009, counsel for the Nichols informed the Government and Bayou Management that Robert Nichols died on February 15, 2009. Counsel for the Nichols provided the Government and Bayou Management with a death certificate stating that "Robert Booth Nichols" died in Geneva Switzerland on February 15, 2009.

  32. Robert Nichols's asserted interest in the forfeited assets at issue in the above captioned criminal ancillary proceeding, which is disputed by the Government, cannot legally be transferred to any estate beneficiary because such transfer would neither convey a right, title or interest in the property that vested before the commission of the acts which gave rise to the forfeiture of the property, *see* 21 U.S.C. § 853(n)(6)(A), nor be a bona fide purchase for value, *see* 21 U.S.C. § 853(n)(6)(B).

**H.** **Terms of the Sterling Funds' Settlement Agreement**

  33. As a result of vigorous, arms-length, and good faith negotiations, the Debtors, the Government and Ellen Nichols reached an agreement in principle on a global settlement of the Forfeiture Proceeding and the Adversary Proceeding. The terms of the settlement were subsequently memorialized in the Nichols Settlement Agreement, which was fully executed by Bayou Management, the Government and Ellen Nichols as of April 28, 2009. As per its terms, the Nichols Settlement Agreement was then submitted to the District Court for approval. On May 4, 2009, the District Court "so ordered" and entered the Nichols Settlement Agreement.

34. On May 6, 2009, the District Court entered an order reinstating the reference to the Bankruptcy Court in the Adversary Proceeding for the purpose of the Bankruptcy Court's consideration of this Motion.

35. The Debtors have concluded that the proposed settlement, as embodied in the Nichols Settlement Agreement, is in the best interests of the Debtors' estates, and, in reaching that conclusion, have considered, among other things, the relative merits of the defenses available to Ellen Nichols, the Debtors' ability to collect any judgment if successful in the litigation, the opinion of the Committee, and the cost, expense, and delay associated with litigating the legal and factual issues implicated in the Adversary Proceeding in the District Court.

36. As embodied in the Nichols Settlement Agreement, once the Bankruptcy Court's order approving the Nichols Settlement Agreements becomes final and non-appealable, Ellen Nichols will pay the Debtors $1 million. The Nichols Settlement Agreement also contains mutual releases of all claims against each other; Ellen Nichols waives all claims against the Debtors, including any claim under section 502(h) of the Bankruptcy Code.

37. The detailed terms of the Nichols Settlement Agreement are as follows:

- Ellen Nichols shall pay $1,000,000 to Bayou Management (the "Bayou Settlement Amount");

- Ellen Nichols agrees to the forfeiture to the United States of the HSBC Account funds, the Nichols Standard Chartered Account Funds, and the Toyota FJ Cruiser, and to take any action necessary to repatriate the HSBC Account Funds and the Standard Chartered Account Funds;

- After payment to Bayou Management, Ellen Nichols shall pay $500,000 to the Government (the "Government Settlement Amount");

- In the event that Ellen Nichols fails to timely pay the Bayou Settlement Amount, then Ellen Nichols shall be deemed to have defaulted herein, and a default judgment shall be entered in favor of Bayou Management for the entire amount of the Nichols Transfer, less the amounts actually collected by the Government with respect to the forfeited property.

- Moreover, if Ellen Nichols fails to timely pay the Bayou Settlement Amount, the Government may forfeit the Restrained Accounts and the Prescott Valley Property and Ellen Nichols will not in any way challenge or contest that forfeiture on behalf of herself, Robert Nichols, or Robert Nichols's estate. Upon Ellen Nichols's payment of the Bayou Settlement Amount, and the Government's receipt of the Standard Chartered Account Funds and the HSBC Account funds, the Government will ask the District Court to vacate the order restraining the Restrained Accounts;

- In the event that Ellen Nichols has timely paid both the Bayou Settlement Amount and the Government Settlement Amount, the Government will move the District Court to vacate the Preliminary Order of Forfeiture as to Prescott Valley Property, and will remove any liens or restraints that it has placed on the Prescott Valley Property, and will have no right to the Prescott Valley Property. In the event that Ellen Nichols fails to timely pay the Government Settlement Amount, the Government will forfeit the

Prescott Valley Property and the Nichols will not in any way challenge or contest that forfeiture.

## PREDICATES FOR RELIEF

38.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is properly before this Court under 28 U.S.C. §§ 1408 and 1409.  The legal predicate for the relief sought herein is Bankruptcy Rule 9019.

## RELIEF REQUESTED

39.     By this Motion, the Debtors respectfully request entry of an order, pursuant to Bankruptcy Rule 9019, approving the Sterling Funds Settlement Agreement and authorizing the Debtors to execute, deliver, and implement the Sterling Funds Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

**A.      Legal Standard**

40.     Pursuant to Bankruptcy Rule 9019, as set forth below, the Debtors submit that the Sterling Funds Settlement Agreement should be authorized and approved because it is in the best interest of the Debtors, their estates and creditors, represents the sound business judgment of the Debtors, and is fair and reasonable under the circumstances.

41.     Bankruptcy Rule 9019 provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bank. P. 9019(a).  Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  In fact, settlements and compromises are "a normal part of the process of reorganization."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424

(1968) *(*quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Accordingly, the Court is authorized to approve the settlement, on the terms set forth in the each of the Settlement Agreements.

42. In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), a court must find that the proposed settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. TMT Trailer Ferry, 390 U.S. at 424; In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F. 3d 600 (2d Cir. 1994). A decision to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court. Drexel Burnham, 134 B.R. at 505. In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and reasonable. Nellis v. Shugrue, 165 B.R. 115, 122 (S.D.N.Y. 1994) (a court may consider the opinions of the trustee or debtor in possession that a settlement is fair and reasonable). In addition, a bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., 217 B.R. 31 (Bankr. S.D.N.Y. 1998); see also Shugrue, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

43. The elements that a court should evaluate in considering whether a proposed settlement falls within the "range of reasonableness" are well-settled: (a) the probability of success in the litigation, (b) the difficulty in collecting after obtaining a judgment in the litigation, (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, (d) the interest of creditors and a proper deference to their reasonable views of the settlement, and (e) the extent to which the settlement is truly the product of arms-

length bargaining, and not of fraud or collusion. See, e.g., TMT Trailer Ferry, 190 U.S. at 424; In re W.T. Grant Co., 699 F.2d 599 (2d Cir. 1983); Ionosphere Clubs, 156 B.R. at 426-27.

44. Thus, in essence, the standard under TMT and its progeny balances the probable success and potential costs of pursuing a claim or defense against the benefits and costs of the proposed settlement.

45. Approval of a settlement under Bankruptcy Rule 9019(a) is appropriate when the settlement is fair and equitable and is in the best interests of a debtor's estate. See, e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia, 327 B.R. at 159 (citations omitted) ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'"); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it.").

**B. The Proposed Settlements with the Settling Redeemer Defendants Satisfy the TMT Factors and Should be Approved Because Each Falls Within the Range of Reasonableness**

46. In the instant case, the Nichols Settlement Agreement is more than fair and equitable and falls well within the range of reasonableness. The Debtors have restored to their estates $1 million. The Nichols Settlement Agreement will also provide for the forfeiture of at least $3.5 million to the Government.

47. The Debtor's principal motivation for entering into the Settlement Agreement is the anticipated difficulty and cost in collecting on any judgment awarded to the Debtors in the Adversary Proceeding. The Debtors and the Government conducted extensive discovery focused on the location and dissipation of the $10 million transferred to the Nichols as part of the Nichols Transfer. Based on that discovery, it appears that most of the $10 million has been disbursed by the Nichols since the Nichols Transfer was made in July 2004, through numerous expenditures

and transfers to known and unknown individuals residing abroad. The Debtors believe that, through discovery, they and the Government have identified all of the Nichols's current assets. The Debtors believe that, in the event that they prevail on their claim against the Nichols in the Adversary Proceeding, they and the Government would be unlikely to collect any more money than they are recovering under the Settlement Agreement.

48. Based upon all of the foregoing, in the exercise of their business judgment, the Debtors have determined that the Sterling Funds Settlement Agreement is fair, reasonable, and equitable and in the best interests of the estates and creditors. The Debtors therefore respectfully request that the Court approve the Sterling Funds Settlement Agreement.

## NOTICE

49. Notice of this Motion has been given in accordance with the Order Establishing Notice Procedures dated May 31, 2006. The Debtors respectfully submit that no other or further notice need be given.

## PRIOR REQUEST FOR RELIEF

50. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested in the Motion and granting the Debtors such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 18, 2009

                                        By: /s/ Gary J. Mennitt
                                            DECHERT LLP
                                            Gary J. Mennitt
                                            Shmuel Vasser
                                            Jonathan D. Perry
                                            1095 Avenue of the Americas
                                            New York, New York  10036-6797
                                            Telephone:  (212) 698-3500
                                            Facsimile:  (212) 698-3599

                                            *Attorneys for the Plaintiff/*
                                            *Debtors and Debtors-in-Possession*